Territorial Law Library

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

    vs.

HENRY C. FLORES et. al.,

    Defendants.

) CRIMINAL CASE NO. CF0133-09
)
)
)
)
) **DECISION AND ORDER**
) **(Defendant Raynold C. Alcantara's**
) **Motion to Dismiss for**
) **Insufficient Evidence )**
)
)
)

This matter came before the HONORABLE VERNON P. PEREZ on May 5, 2009 on Defendant Raynold C. Alcantara's Motion to Dismiss for Insufficient Evidence. Assistant Attorney General Jeffery Moots and Assistant Attorney General Clyde Lemons were present for the Prosecution Division. Attorney Samuel S. Teker and Attorney Joshua D. Walsh were present with Defendant Raynold C. Alcantara and Defendant Juan L.G. Diaz. Attorney Thomas J. Fisher was present with Defendant Joaquin Q. Castro. Attorney Howard Trapp was present with Defendant Esmeralda A. Sabinay. Attorney Joaquin C. Arriola, Jr., was present with Defendant Benedette C. Santos. Attorney Rachel Taimanao-Ayuyu was present with Defendant Vincent G. Perez. Attorney Lewis W. Littlepage was present with Defendant Henry C. Flores. Attorney Julie C. Rivera, representing Defendant Luke Tonaichy, was also present. The Court took the motion under advisement. After having heard the parties' arguments, considering the parties' pleadings and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On March 12, 2009, Defendant Raynold C. Alcantara (hereinafter "Defendant Alcantara") was indicted, along with nine other co-defendants, with one charge of Conspiracy to Commit Aggravated Assault (as a 2nd Degree Felony) in violation of 9 G.C.A. §§ 13.30 & 13.60 (a). Defendant Alcantara, along with three of the nine other co-defendants, was also charged in

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09       - Page 1 of 15 -

the indictment with the substantive offense of Aggravated Assault (as a 2nd Degree Felony), in violation of 9 G.C.A. §§ 19.20 (a) (1) and (b). The indictment stems from the alleged assault of a teenage boy being held at the Dededo Precinct and the alleged conspiracy to cover up the assault. An arraignment was held on March 25, 2009 where Defendant Alcantara asserted his right to a speedy trial.

On April 15, 2009, Defendant Alcantara filed Defendant Alcantara's Motion to Dismiss for Insufficient Evidence (hereinafter "Motion to Dismiss"). On April 23, 2009, Prosecution filed People's Opposition to Defendant Raynaldo Alcantara's Motion to Dismiss (hereinafter "Opposition"). A hearing on the Motion to Dismiss was held on May 5, 2009.

## DISCUSSION

Section 50.54 of Title 8 of the Guam Code Annotated (G.C.A.) sets forth the standards for an indictment and provides that:

**§ 50.54. Form of Indictment: Standards for Indicting.**

(a) An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a felony or a felony and a related misdemeanor.

(b) The grand jury *shall* find an indictment when from the evidence presented there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it.

8 G.C.A. §50.54

"Reasonable cause amounts to evidence such that a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." People v. Grajo, 1987 WL 109393 at * 2 (D. Guam App. Div. 1987) (citations omitted). A reviewing court should uphold an indictment "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." Id.

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 2 of 15 -

Defendant Alcantara is charged by way of an indictment, with one charge of Conspiracy to Commit Aggravated Assault (as a 2nd Degree Felony) in violation of 9 G.C.A. §§ 13.30 & 13.60(a). 9 G.C.A. § 13.30 sets forth that:

**§ 13.30. Conspiracy: Definition.**

A person is guilty of conspiracy to commit a crime if:

(a) he agrees with one or more other persons that he or one of them will engage in conduct which constitutes such crime;

(b) he does so with the intention of engaging in, promoting or assisting in the conduct which constitutes such crime; and

(c) he or one of them performs an overt act in pursuance of the agreement.

9 G.C.A. §13.30

Defendant Alcantara is also charged by way of an indictment, with one charge of Aggravated Assault (as a 2nd Degree Felony), in violation of 9 G.C.A. §§ 19.20 (a) (1) and (b). 9 G.C.A. § 19.20 (a) (1) sets forth that:

**§ 19.20. Aggravated Assault; Defined & Punished.**

(a) A person is guilty of aggravated assault if he either recklessly causes or attempts to cause:

(1) serious bodily injury to another in circumstances manifesting extreme indifference to the value of human life;

9 G.C.A. §19.20 (a) (1).

In the Motion to Dismiss, Defendant Alcantara first argues that the indictment should be dismissed because no evidence was presented to the grand jury showing an agreement, as an element of the offense of conspiracy, as set forth in 9 G.C.A. § 13.30 (a). Specifically, Defendant Alcantara argues that no evidence whatsoever was presented to the grand jury that he agreed with any of his co-defendants to commit the crime which he is charged with. Defendant

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 3 of 15 -

Alcantara next argues that the evidence presented to the grand jury failed to lay a sufficient evidentiary foundation to support the charge of aggravated assault. Specifically, Defendant Alcantara argues that there is no evidence presented to the grand jury that shows that he was one of the perpetrators of the alleged assault. Defendant Alcantara concludes that this lack of any evidence mandates that the grand jury cannot find probable or reasonable cause to support either the charge of conspiracy or the charge of aggravated assault, and the indictment must be dismissed in its entirety.

Prosecution argues in the Opposition that the evidence was sufficient to establish probable cause in this case for a conspiracy indictment and an aggravated assault indictment. Prosecution points out, relying upon the holdings in Interstate Circuit v. United States, 306 U.S. 208 (1939) and United States v. Cabrera, 116 F.3d 1243 (8th Cir. 1997), that since prosecution seldom has direct testimony that parties entered into an agreement to be involved in criminal activity, prosecution need only show some degree of knowing involvement or cooperation by the defendant. Prosecution sets forth in the Opposition that the testimony before the grand jury showed that Defendant Alcantara filed a report with the officer investigating this matter that failed to report numerous beatings that took place at the Dededo Precinct. Prosecution argues that Defendant Alcantara's report was part of the conspiracy to "cover-up" the police brutality that took place in this case. Prosecution also argues that testimony before the grand jury demonstrated that the teenage boy was beaten by the police officers charged herein.

As to the conspiracy charge, the law governing conspiracy cases is quite clear in that each element of conspiracy may be established by circumstantial evidence or reasonable inferences from the evidence presented. Glasser v. U.S., 315 U.S. 60, 80 (1942) (holding that "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 4 of 15 -

purpose and plan may be inferred from a development and collocation of circumstances."); U.S. v. Daychild, 357 F.3d 1082, 1097 (9th Cir. 2004) (internal quotations omitted); U.S. v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987) (holding that "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of a defendant's actions.") To obtain a conviction for the crime of conspiracy, the evidence may be entirely circumstantial or inferentially established by proof of the conduct, circumstances, actions and the relationship of the parties so charged. See, People v. Herrera, 98 Cal. Rptr. 2d 911, 922 (Cal. App. 2000); State v. Abdullah, 967 A.2d 469, 475 (R.I., 2009). The law recognizes that circumstantial evidence is the usual mode of proving a conspiracy since it is not often that direct evidence can be had. Diaz-Rosendo v. U.S., 357 F.2d 124, 129 (9th Cir. 1966) (holding that the existence of a conspiracy can rarely be proved in any other way); Com. v. Lonardo, 2009 WL 1857339 at *2, 74 Mass. App. Ct. 566 (Mass. App. Ct., 2009) (holding that the "acts of different persons who are shown to have known each other, or to have been in connection with each other, directed towards the accomplishment of the same object may be satisfactory proof of a conspiracy.")

As to the element of an agreement, the law is clear that the existence of a formal agreement between co-conspirators need not be proved because it is only in rare instances that a conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. See, People v. Vu, 49 Cal. Rptr. 3d 765, 777 (Cal. App. 2006); State v. Millan, 966 A.2d 699, 706 (Conn., 2009). The requisite agreement may be inferred from proof of the separate acts of the individuals accused as co-conspirators and from the circumstances surrounding the commission of the acts. See, People v. Bogan, 62 Cal. Rptr. 3d 34, 36-37 (Cal. App. 2007). The existence of a tacit or mutual understanding between co-conspirators is also

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 5 of 15 -

sufficient to establish a conspiratorial agreement. U.S. v. Kellam, 568 F.3d 125, 139 (4th Cir. 2009); State v. Hall, 669 S.E.2d 30, 37-38 (N.C. App., 2008) (holding that evidence of a mutual, implied understanding will satisfy the agreement element of conspiracy and may be inferred from the defendant's behavior.) Prosecution can show the existence of an agreement necessary to support a conspiracy conviction via circumstantial evidence and inferences based on the conduct of those allegedly involved in the scheme. See, U.S. v. Kiriki, 756 F.2d 1449, 1453 (9th Cir. 1985); U.S. v. Seher, 562 F.3d 1344, 1364 (11th Cir. 2009).

In State v. Millan, 966 A.2d 699 (Conn. 2009), the Connecticut Supreme Court addressed the issue of whether there was sufficient evidence to support the defendant's conviction for conspiracy to commit assault in the first degree. The court set forth that while the state must prove an agreement to commit assault, the existence of a formal agreement between the conspirators need not be proved because it is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. Id. at 706. The court held that the requisite agreement may be inferred from proof of the separate acts of the individuals accused as co-conspirators and from the circumstances surrounding the commission of these acts. Id. The court also held that a co-conspirator's conduct at the scene can provide the requisite evidence of an agreement. Id. at 707.

In Harris v. State, 968 A.2d 32 (Del. 2009), the Delaware Supreme Court addressed the issue of whether the evidence was sufficient to support a defendant's adjudication of delinquency for conspiracy in the second-degree and attempted first–degree robbery. Prosecution claimed that the defendant was a 'lookout' during the robbery, while the defendant claimed he was 'looking at' an unfortunate event unfolding before his eyes. The court held that it is not necessary that there be a formal agreement in advance of a crime. Id. at 36. The court held if a person

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 6 of 15 -

understands the unlawful nature of the acts taking place, and nevertheless assists in any manner in carrying out the common scheme, that person becomes a conspirator to commit the offense. Id. The court found that there was sufficient evidence in the record to support the trial judge's conclusion that the defendant understood the unlawful nature of the acts taking place and assisted in carrying out the common scheme, even if only as a lookout. Id. at 37.

Defendant Alcantara's argument in the Motion to Dismiss, that Prosecution failed to present evidence to the grand jury establishing the specifics of the alleged agreement overlooks general principles of law, hereinbefore discussed, that clearly set forth that Prosecution need not detail the specifics of the agreement to commit conspiracy. On the contrary, the existence of the illegal agreement may be proved by circumstantial evidence or be inferred from the facts and circumstance of the case. U.S. v. Hernandez, 876 F.2d 774, 777 (9th Cir. 1989); Aguilera v. State, 667 S.E. 2d 378, 381-382 (Ga. App., 2008) (holding that a tacit understanding may be proved by circumstantial evidence, inferred from the nature of the acts done, the relationship of the parties, the interest of the alleged conspirators and other circumstances). Prosecution is not required to show that a conspiracy agreement was explicit, an implicit agreement may be inferred from the facts and circumstances of the case. U.S. v. Restrepo, 930 F.2d 705, 709 (9th Cir. 1991) (citations omitted). The law equally recognizes that participation in an illegal combination need not be proved by direct evidence, and a person may be held as a conspirator although he joins the criminal concert at a point in time far beyond the initial act of the conspirators. Lile v. U.S., 264 F.2d 278, 279-281 (9th Cir. 1958) (holding that if a person joins a criminal concert later, knowing of the criminal design, and acts in concert with the original conspirators, he may he held responsible not only for everything which may be done thereafter, but also for everything which has been done prior to his adherence to the criminal design.)

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 7 of 15 -

As to the aggravated assault charge, the law equally recognizes that an aggravated assault charge can likewise be upheld by circumstantial evidence. See, State v. Pena, 104 P. 3d 873, 875 (Ariz. App. Div., 2005) (holding that the substantial evidence required for a conviction may be either circumstantial or direct); State v. Rodriquez, 2003 WL 25745963 at *2 (Vt. 2003) (holding that the evidence, while circumstantial, is sufficient to convince a reasonable trier of fact that the defendant was guilty of aggravated assault beyond a reasonable doubt.) Sufficient evidence will support a defendant's conviction if the evidence presented would allow reasonable minds to infer that the defendant committed the charged crimes. State v. Silvas, 2009 WL 726033 at ¶ 9 (Ariz. App. Div. 2009).

In an aggravated assault charge, the identity of a perpetrator can likewise be inferred from circumstantial evidence. See, Howard v. State, 2007 WL 290125 (Tex. App. 2007). "It is not necessary that the identification of the defendant as the perpetrator of the crime be made positively or in a manner free from inconsistencies." State v. Silvas, 2009 WL 726033 at ¶ 9 (Ariz. App. Div. 2009) (holding that sufficient evidence supported the defendant's conviction for aggravated robbery, armed robbery and aggravated assault). It is the function of the jury to pass upon the strength or weakness of the identification and the uncertainness of the witness in giving their testimony. People v. Smith, 367 N.E. 2d 84, 88 (Ill. App., 1977); People v. Houser, 193 P.2d 937, 941 (Cal. App. 1948).

In State v. McCormick, 2004 WL 2775458 (Tenn. Crim. App., 2004), the court addressed the issue of whether there was sufficient evidence to support the defendant's convictions of aggravated assault and evading arrest. The victim, who had been cut about his head and neck area so that he needed stitches, did not testify at the trial. Nor was there any eyewitness, who witnessed the actual cutting of the victim. The court, in upholding the aggravated assault

People v. Flores et. al
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 8 of 15 -

conviction, pointed out that although the evidence of the defendant's guilt was circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. Id. at *2. The court held that there was sufficient circumstantial proof, including a witness who saw the defendant in the parking lot after the victim was cut, leading to a reasonable conclusion that the defendant was the person who cut the victim. Id. at *3.

In State v. Brubaker, 625 P.2d 78 (Mont. 1981) the Supreme Court of Montana addressed the issue of whether there was sufficient evidence to sustain a conviction of aggravated assault against the defendant. The defendant had brought his girlfriend into an emergency room in a comatose state with abnormal respiration and other neurological symptoms indicating severe brain damage and bruises, which were at least forty-eight hours old. The court, in upholding the verdict, found that defendant's explanation of how the injuries to the victim possibly occurred directly contradicted the testimony of the attending physicians. Id. at 80. The court also found that the defendant had the opportunity to commit the crime since he was the only one with the victim when the injuries occurred. Id. The court also reasoned that the defendant's failure to report the incident to the police and his waiting some forty-eight hours before seeking medical attention for the life-threatening injuries to the victim was not consistent with innocent conduct. Id. The court concluded that there was sufficient evidence to connect the defendant to the assault on the victim so as to uphold the charge of aggravated assault. Id. at 81.

After reviewing the grand jury taped proceeding and considering the evidence presented to the grand jury, this Court finds that sufficient evidence was presented to support both the charge of conspiracy and the substantive charge of aggravated assault against Defendant Alcantara. During the grand jury proceedings in this case, held on March 12, 2009, Prosecution called five witnesses to testify about the events that took place at the Dededo Precinct on the

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 9 of 15 -

evening of November 22, 2008 and the early morning of November 23, 2008, as well as the follow-up investigation. Grand jury witness Kevin Quintanilla testified that Defendant Alcantara was one of the four Guam police officers that was in the hallway where the beating of the teenage boy took place. (Grand Jury Recording at 3:13 p.m.). Kevin Quintanilla testified that although he couldn't see exactly which police officers were beating the teenage boy, he could hear what sounded like someone being hit. (Grand Jury Recording at 3:13 p.m.). Kevin Quintanilla testified that when the teenage boy was returned to a holding cell, it was obvious that he had been beaten. (Grand Jury Recording at 3:14 p.m.). Kevin Quintanilla testified that the teenage boy was not offered any medical aid by any of the police officers after the beating. (Grand Jury Recording at 3:14 p.m.).

The teenage boy testified that as he was returning to the holding cell with a mop, he was hit in the face by a police officer. (Grand Jury Recording at 2:55 p.m.). The teenage boy testified that he was then severely beaten by a number of police officers in the hallway. (Grand Jury Recording at 2:56-2:59 p.m.). The teenage boy testified that he couldn't see all of the officers that were beating him. (Grand Jury Recording at 2:57 p.m.). Special Agent Kuper testified that the teenage boy identified Defendant Alcantara as one of the Guam police officers that was in the hallway at the time he was severely beaten. (Grand Jury Recording at 3:37 p.m.).

Grand jury witness Dr. Espinola, Chief Medical Examiner for the Territory of Guam, testified that he was called upon by the Guam Police Department to determine the nature of the injuries to the teenage boy. (Grand Jury Recording at 3:17-3:19 p.m.). Dr. Espinola testified that the teenage boy had to have his spleen removed due to the injuries from the alleged beating by the police officers. (Grand Jury recording at 3:23 p.m.). Dr. Espinola testified that the surgeon who removed the teenage boy's spleen found that there were blood clots in the abdomen, which

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 10 of 15 -

demonstrated that the injury to the spleen was not a fresh injury. (Grand Jury Recording at 3:21-3:23 p.m.). Dr. Espinola testified that the injuries to the teenage boy were serious and that the teenage boy could have possibly bleed to death if he hadn't eventually gotten medical treatment. (Grand Jury Recording at 3:23-3:24 p.m.). Dr. Espinola testified that the teenage boy's injuries to his spleen could not have been caused by being tackled and possibly hitting a door jam or door frame during a fall to the ground. (Grand Jury Recording at 3:21 p.m.; 3:24- 3:25 p.m.). Dr. Espinola testified that the teenage boy's injuries to the spleen had to have been caused by a hard blow from either a hard kick or a forceful uppercut punch. (Grand Jury Recording at 3:21-3:22 p.m.).

Special Agent Cruz testified that co-defendant Joaquin Q. Castro reported that he tackled the teenage boy in the hallway and took him to the floor. (Grand Jury Recording at 4:16-4:17 p.m.). Special Agent Cruz testified that co-defendant Joaquin Q. Castro reported that he thought the teenage boy struck a door jam or door frame with his left side when falling to the floor. (Grand Jury Recording at 4:16-4:17 p.m.). Special Agent Cruz testified that co-defendant Joe M. Duenas reported that he assisted other officers with a struggle in the hallway and grabbed the detainee (the teenage boy) by the hair. (Grand Jury Recording at 4:13 p.m.). Special Agent Cruz testified that co-defendant James V. Quenga reported that he saw co-defendant Joaquin Q. Castro struggling with a skinny detainee and that he assisted in the struggle and took the detainee down with no trouble. (Grand Jury Recording at 3:55 p.m.).

Special Agent Cruz testified that Defendant Alcantara reported that he pushed the guy with the mop (the teenage boy) up against the wall in the hallway, so that the teenage boy would not interfere with what was going on in the holding cell. (Grand Jury Recording at 4:01 – 4:02 p.m.). Special Agent Cruz testified that Defendant Alcantara reported that he then took the

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 11 of 15 -

teenage boy back to a holding cell and put the mop and bucket away. (Grand Jury Recording at 4:01-4:02 p.m.). Special Agent Cruz testified that Defendant Alcantara reported that he didn't see any officer use excessive force towards anyone. (Grand Jury Recording at 4:02 p.m.).

Special Agent Cruz testified that Defendant Alcantara reported that if any of the detainees had injuries, that they were sustained while fighting each other in the jungle that evening. (Grand Jury Recording at 4:03 p.m.). Special Agent Cruz testified that the teenage boy was not part of the group of detainees that were brought to the Dededo Precinct that evening for allegedly fighting in the jungle. (Grand Jury Recording at 4:03 p.m.). Special Agent Cruz testified that the teenage boy was brought into the Dededo Precinct well before the detainees that had allegedly been fighting in the jungle were brought in. (Grand Jury Recording at 4:03 p.m.).

Special Agent Cruz testified that during the course of his investigation, he secured the Dededo Precinct log book. (Grand Jury Recording at 4:18 p.m.). Special Agent Cruz testified that the Dededo Precinct log book is an official document and record kept by the Guam Police Department. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that in the log book, there is an entry that states that the teenage boy "was later released to his parents." (Grand Jury Recording at 4:18-4:19 p.m.). Special Agent Cruz testified that to the best of his knowledge, the log book entry was prepared by co-defendant Vincent G. Perez. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that co-defendant Henry C. Flores signed the log book, as the shift supervisor that night. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that the entry in the log book was a false entry as to what happened to the teenage boy. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that the teenage boy was not released to his parents, but was transported to Guam Memorial Hospital by medics, after he kept losing consciousness. (Grand Jury Recording at 4:18 - 4:21 p.m.).

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 12 of 15 -

Kevin Quintanilla testified that he was later told by co-defendant Henry C. Flores that someone from the Guam Police Department would be coming to talk to him about what happened that evening. (Grand Jury Recording at 3:14 p.m.). Kevin Quintanilla testified that co-defendant Henry C. Flores instructed him to say that nothing happened and that he didn't see anything. (Grand Jury Recording at 3:14 -3:15 p.m.). Kevin Quintanilla testified that co-defendant Henry C. Flores made it clear that he was to lie to any of the investigating officers about what happened that evening. (Grand Jury Recording at 3:14-3:15 p.m.). Kevin Quintanilla testified that he heard co-defendant Henry C. Flores give co-defendant Benedette C. Santos the same instruction, to lie to investigators. (Grand Jury Recording at 3:15 p.m.).

Based upon the testimony presented, this Court finds that it was reasonable for the grand jury to find that Defendant Alcantara was part of the underlying conspiracy. There was an abundance of testimony before the grand jury, including Defendant Alcantara's own report to an investigating officer, that Defendant Alcantara was present in the hallway where the teenage boy was severely beaten by police officers. Testimony before the grand jury demonstrated that Defendant Alcantara's report that he only pushed the teenage boy against the wall and then returned the teenage boy to a holding cell, directly conflicted with the testimony of other police officers as to what happened in the hallway. Testimony before the grand jury demonstrated that Defendant Alcantara reported to a police investigator that he didn't see any officer use excessive force towards any individuals. Testimony before the grand jury demonstrated that Defendant Alcantara failed to report the beating of the teenage boy by the police officers in the hallway, when questioned by a police investigator as to the events that took place at the Dededo Precinct on the evening of November 22, 2008. While it is true that presence alone is not enough to convict, a single act will suffice if the circumstances permit the inference that the presence or act

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 13 of 15 -

was intended to advance the ends of the conspiracy. See, U.S. v. Gilmer, 534 F.3d 696, 702 (7th Cir. 2008).

The Court also finds that it was reasonable for the grand jury to find that Defendant Alcantara committed the crime of aggravated assault. Testimony before the grand jury, including Defendant Alcantara's own testimony, placed him in the hallway where the beating of the teenage boy took place. Testimony before the grand jury demonstrated that the teenage boy was violently punched and kicked repeatedly by numerous police officers in the hallway. Testimony before the grand jury demonstrated that the teenage boy identified Defendant Alcantara as being present in the hallway when the beating took place. Testimony before the grand jury established that the teenage boy had to have his spleen removed due to the beating by the police officers in the hallway of the Dededo Precinct. Testimony before the grand jury demonstrated that the injuries that the teenage boy received from the beating in the hallway were serious enough that he could have bleed to death if he had not eventually received medical attention. The evidence introduced to the grand jury provided sufficient rational grounds that Defendant Alcantara was not merely present in the hallway where the beating of the teenage boy took place, but was a party to the crime of aggravated assault. See, Lunz v. State, 332 S.E.2d 37, 38-39 (Ga. App. 1985).

Based on the evidence presented to the grand jury, the Court finds that there is some rational ground for assuming the possibility that the two offenses, as charged, were committed and that the accused is guilty of them both. The evidence presented provided sufficient information for the grand jury to find reasonable cause that Defendant Alcantara allegedly committed the two offenses that he is charged with. This Court finds that a conscientious jury

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09            - Page 14 of 15 -

could clearly have had a strong suspicion that Defendant Alcantara committed the two crimes that he is charged with.

## CONCLUSION

For the foregoing reasons, Defendant Raynold C. Alcantara's Motion to Dismiss for Insufficient Evidence is hereby DENIED in its entirety.

So ORDERED this day of _29_ July, 2009.

HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

Dated at Hagatna, Guam

_JUL 2 9 2009_

Tammy L. Pinaula
Deputy Clerk, Superior Court of Guam

*People v. Flores et. al*
Decision and Order (Defendant Raynold C. Alcantara's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 15 of 15 -